555 So.2d 976 (1990)
James Edward ROBERSON, Appellant,
v.
STATE of Florida, Appellee.
No. 88-2646.
District Court of Appeal of Florida, First District.
January 26, 1990.
*977 Michael E. Allen, Public Defender, and David P. Gauldin, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Carolyn J. Mosley, Asst. Atty. Gen., Tallahassee, for appellee.

ON MOTION FOR CLARIFICATION
BARFIELD, Judge.
We grant the State's motion for clarification wherein the question raised is whether, as a result of our original opinion dated December 8, 1989, the trial court may apply the permitted guidelines ranges to offenses committed after the effective date of the amendment creating those ranges. The State's point is well taken. In our original analysis, we failed to account for the resentencing of case no. 88-3653, in which appellant was convicted of two offenses committed on August 14, 1988. The effective date of Chapter 88-131, § 1, Laws of Florida, which amended Florida Rule of Criminal Procedure 3.988 and created the permitted ranges, was July 1, 1988. Accordingly, we withdraw our previous opinion and substitute the following opinion in its place.
James Edward Roberson appeals from three unrelated judgments and sentences entered on September 30, 1988. The assistant public defender filed an initial brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), asserting that he could not argue, in good faith, that the trial court had committed reversible error. Pursuant to State v. Causey, 503 So.2d 321 (Fla. 1987), we ordered supplemental briefs because it appeared that the sentencing guidelines scoresheet was incorrectly scored. The supplemental briefs were timely filed, addressing the following issue: "Whether the primary and additional offense scores on the guidelines scoresheet for circuit court case 87-4261 and case 88-3653 were correctly computed, in accordance with Florida Rule of Criminal Procedure 3.701(d)?" We find that the scoresheet was incorrectly computed and reverse and remand for resentencing.
In circuit court case no. 82-2663, appellant was convicted of misdemeanor petit theft and third degree felony grand theft. The court withheld imposition of sentence and placed him on probation for a period of 5 years. In 1986, he violated probation conditions and received 3 additional years of probation. In 1987, he violated probation conditions again. In September, 1988, the court revoked the probation and sentenced appellant to time served for the petit theft conviction and to 4 1/2 years imprisonment for the grand theft conviction.
*978 In circuit court case no. 87-4261, appellant was convicted of second degree burglary and third degree grand theft. On September 30, 1988, the court sentenced him to 4 1/2 years imprisonment for the grand theft offense to run concurrently with the prison sentence imposed in case no. 82-2663. The court withheld imposition of sentence for the burglary, placing appellant on probation for a period of 5 years to run consecutively to the 1987 grand theft sentence.
In case no. 88-3653, appellant was convicted of another second degree burglary and third degree grand theft. The court withheld imposition of sentence on both counts and placed appellant on probation for a period of 5 years to run concurrently with each other and the probation imposed in case no. 87-4621.
A category 5 guidelines scoresheet was prepared, listing case no. 87-4621 as the primary case and case no. 88-3653 as an additional case.[1] A second degree felony and a third degree felony were included as primary offenses at conviction. Another second degree felony and a third degree felony were listed as additional offenses at conviction. Two third degree felonies and three misdemeanors were listed as prior record.[2] Points were also scored for a prior category 5 (burglary) offense and for legal restraint at the time of the offenses. The scoresheet reflected a composite score of 91 points, resulting in a recommended sentencing range of "4 years (3 1/2-4 1/2)."
In his supplemental brief, appellant contends that the primary and additional offense categories were incorrectly scored. He recomputes his scoresheet as follows:

 I. Primary offense
 2d degree burglary 30
 II. Additional offenses
 2d degree burglary 6
 two 3d deg. grand thefts 5
III. Prior Record
 two 3d deg. felonies 13
 three misdemeanors 3
 Prior category 5 convictions 5
 IV. Legal status at time of offenses 10
 __
 72

Appellant concludes that the new score lowers his sentence one cell to the "2 1/2-3 1/2 year" range.
The state concedes error, but recomputes the scoresheet differently:

 I. Primary offenses 
 two 2d degree burglaries 36
 II. Additional offenses
 three 3d deg. grand thefts 6
 one misdemeanor petit theft 1
III. Prior Record
 one 3d deg. felonies 6
 two misdemeanors 2
 Prior category 5 convictions 5
 IV. Legal status at time of offenses 10
 __
 66

The state concludes that the new score places appellant in the "Community Control or 12-30 months incarceration" sentencing range. However, the state contends that, under Florida Rule of Criminal Procedure 3.701(d)(14), the trial court could have departed one cell from the recommended sentence following revocation of probation without having to articulate any reason for the departure. Such an upward departure would have placed appellant in the "3 yrs. incarceration (2 1/2-3 1/2)" range. The state contends further that the analysis does not stop at rule 3.701(d)(14), because appellant committed his last crime on August 14, 1988, six weeks after the effective date of amended rule 3.988(e), which allowed the trial court to sentence appellant within a permitted guidelines range of "community control or 1-4 1/2 years incarceration."[3] *979 The state concludes that the trial court properly imposed a sentence at the top of the permitted guidelines range and, since the scoresheet errors did not affect the recommended range, the errors were harmless.
A single guideline scoresheet covering all offenses pending before the court for sentencing must be used. Fla.R.Crim.P. 3.701(d)(1). When a defendant is being sentenced for multiple offenses, the primary offense at conviction is determined by preparing separate scoresheets, scoring each offense at conviction as the primary offense and the other offenses as additional offenses. The scoresheet which recommends the most severe sentencing range must be used by the sentencing judge. Fla.R.Crim.P. 3.701(d)(3). The Committee Notes to rule 3.701(d)(3) provide that "[t]he proper offense category is identified upon determination of the primary offense. When the defendant is convicted of violations of more than one unique statute, the offenses are to be sorted by statutory degree."
It is clear that the original scoresheet incorrectly included both a second degree and third degree felony as primary offenses at conviction. A corrected scoresheet should include the two second degree burglaries as the primary offenses at conviction. As discussed below, the recomputed composite score using two counts of second degree burglary as primary offenses is 72 points, resulting in a recommended sentence in the "2 1/2-3 1/2 year" range. Fla.R.Crim.P. 3.988(e). The composite score using two counts of second degree grand theft as primary offenses is 51 points, resulting in a recommended sentence in the "Community Control or 12-30 mos. incarceration" range. Fla.R.Crim.P. 3.988(f). The former is the appropriate scoresheet to utilize.
As to the additional offense category, only the 1987 and 1988 third degree grand thefts should be scored. Fla.R. Crim.P. 3.701(d)(4). The state's inclusion of the 1982 offenses as additional offenses at conviction is improper because the 1982 offenses are non-guidelines sentences which were properly scored in the original scoresheet under the prior record category. Fla.R.Crim.P. 3.701(d)(5)(a); Thorp v. State, 555 So.2d 362 (Fla. 1990).
Additionally, the original scoresheet correctly includes one count of a third degree felony (1981 burglary), and three misdemeanors (1981 joyriding and petit theft and the 1982 petit theft) as prior record. The balance of the original scoresheet  a prior category 5 conviction (1981 burglary) and legal constraint  is correct. The correct composite score is 72 points, resulting in a "2 1/2-3 1/2 year" sentencing range. See Fla. R.Crim.P. 3.988(e).
We disagree with the state's application of rule 3.701(d)(14). Appellant's probation was revoked for the 1982 non-guidelines offenses. Rule 3.701(d)(14) should only apply to a revocation of probation pertaining to a guideline offense.
We also disagree with the state's application of the permitted ranges to circuit court case no. 87-4261. While the state correctly asserts that appellant's sentence falls at the top of the permitted range of the third cell, application of amended rule 3.988 to offenses occurring before the effective date of the amendment would violate constitutional prohibitions against ex post facto laws.[4] In order for a change in the law to be applied ex post facto, it must be retrospective, i.e., it must apply to events occurring before its enactment; and, it must not disadvantage the offender affected by it. Miller v. Florida, 482 U.S. 423, 431, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351, 360 (1987). Additionally, the change must not affect "substantial personal rights" and must be merely procedural in nature. Id. Application of the permitted ranges to case no. 87-4261, would clearly be retrospective. The state seeks to apply it to offenses which occurred before the effective date of the amendment. The amendment would also disadvantage appellant in that it would have the effect of increasing his sentence. Finally, the *980 amendment changes substantive law. See Smith v. State, 537 So.2d 982, 986, n. 2 (Fla. 1989) ("formulation of the grid schedules and the recommended ranges for sentencing is clearly substantive law"); see also McCaskell v. State, 542 So.2d 461 (Fla. 5th DCA 1989) (amended rule 3.988 creating the permitted ranges was a substantive change in the law which should have prospective effect only for purposes of ex post facto clause).
In State v. Williams, 546 So.2d 809 (Fla. 4th DCA 1989), the Fourth District Court of Appeal recently held that the permissive ranges could not be applied ex post facto to an offense occurring prior to the effective date of amended rule 3.988. The trial court in Williams had used the permitted ranges to sentence the defendant one cell lower than the recommended range. The state appealed, claiming that use of the permitted ranges constituted an ex post facto violation and, thus, was prohibited. Applying Miller, the appellate court agreed. It found that, although the amendment worked to the defendant's advantage, other defendants who could be sentenced one cell above the recommended range without requiring any written reasons for departure and without the right of appellate review would be substantially disadvantaged thus, making the punishment more onerous for crimes committed prior to the effective date of the amendment. In support of its reasoning, the court cited to a single statement of law made in Weaver v. Graham, 450 U.S. 24, 33, 101 S.Ct. 960, 966, 67 L.Ed.2d 17 (1981), that "the inquiry looks to the challenged provision and not to any special circumstances that may mitigate its effect on the particular individual."
While we agree with the result in State v. Williams, the court's rationale is incorrect. At the onset, we do not believe that our sister court intended to give the state standing to assert a constitutional ex post facto challenge. We read the state's argument in State v. Williams to be that, no matter the effect of the 1988 amendment on a defendant, it is impermissible to apply the amendment of a criminal statute to an offense committed prior to the effective date of the amendment. Art. X, § 9, Fla. Const. The state's argument would cut two ways: it may challenge the application of a change in the law to a crime previously committed, see e.g., Castle v. State, 305 So.2d 794 (Fla. 4th DCA 1974), aff'd, 330 So.2d 10 (Fla. 1976) (defendant had no right to benefit from an ameliorative change in the law); and, it may assert that it cannot apply a change in the law based upon federal and state constitutional ex post facto principles.
As to the rationale actually employed in State v. Williams, the Fourth District Court of Appeal completely misinterpreted the statement made in Weaver, giving it a much too expansive reading. Clearly, it is not the actual sentence imposed which makes a new law more onerous than an old law, but rather it is the change in the "standard of punishment prescribed by the statute" which must be examined for purposes of an ex post facto analysis. Lindsey v. Washington, 301 U.S. 397, 401-402, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937).[5] The amount of punishment prescribed under *981 the grid schedules has surely changed with the 1988 amendment of rule 3.988. However, that change must still "disadvantage the defendant affected by it" in order to violate the constitutional prohibition against ex post facto laws. Miller.
In summary, a corrected scoresheet would place appellant within the "2 1/2-3 1/2" year sentencing range, one cell lower than that which was recommended on the original scoresheet. The state's arguments concerning the application of rule 3.701(d)(14) is meritless. We also hold that the constitutional prohibitions against ex post facto laws prohibit application of amended rule 3.988 to circuit court case no. 87-4261. Based on that analysis, however, it follows that the permitted ranges may be applied to circuit court case no. 88-3653, as those offenses were committed after the effective date of amended rule 3.988. Because the original sentence did not involve a departure, the trial judge, upon remand for resentencing, may consider whether a departure sentence is appropriate. Roberts v. State, 534 So.2d 1225 (Fla. 1st DCA 1988), approved, 547 So.2d 129 (Fla. 1989).
Accordingly, we REVERSE and REMAND for recomputation of the guideline scoresheet and for resentencing.
BOOTH and WIGGINTON, JJ., concur.
NOTES
[1] Apparently, appellant did not elect to be sentenced under the guidelines for the 1982 offenses.
[2] According to the pre-sentence investigation report, appellant's prior adult record includes 1981 convictions for misdemeanor joyriding, misdemeanor petit theft and third degree burglary. The 1982 misdemeanor petit theft and third degree grand theft would make up the remaining offenses scored under the prior record category.
[3] The Florida Supreme Court adopted amendments to rules 3.701 and 3.988 on April 22, 1988. Florida Rules of Criminal Procedure Re: Sentencing Guidelines (Rules 3.701 & 3.988), 522 So.2d 374 (Fla. 1988). The Legislature approved and implemented the amendments in accordance with section 921.001, effective July 1, 1988. Ch. 88-131, § 1, Laws of Florida.
[4] Art. I, § 10, cl. 1, U.S. Const.; Art. I, § 10, Fla. Const.
[5] In Lindsey, a new statute changed the fifteen year maximum sentence for grand larceny from discretionary to mandatory. The defendant was sentenced to the mandatory sentence under the new law. The U.S. Supreme Court reversed, holding that while the defendant could have been sentenced to the maximum sentence under the old law, "the ex post facto clause looks to the standard of punishment prescribed by a statute, rather than to the sentence actually imposed." 301 U.S. at 401-402, 57 S.Ct. at 799. Because the old law would give the defendant a possibility of parole prior to expiration of the maximum sentence, the new law was to the defendant's substantial disadvantage and, therefore, was applied in violation of the ex post facto clause. 301 U.S. at 402, 57 S.Ct. at 799. In Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), a new Florida statute provided, in part, that a life imprisonment sentence shall include a mandatory 25-year sentence without eligibility of parole. Because the defendant had been sentenced to death, the Court held that the new provision had no effect on him. Therefore, ex post facto principles were not implicated. The Court read Lindsey to mean that a defendant is not precluded from making an ex post facto challenge of a new law "simply because the sentence he received under the new law was not more onerous than that which he might have received under an old [law]." 432 U.S. at 300, 97 S.Ct. at 2301. The Court distinguished Lindsey, in which the defendant had to receive the fifteen year mandatory sentence, as opposed to the defendant in Dobbert, who was not affected at all by the new provision.